UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| PAULA GARCIA *et al* § | |
| § | |
| Plaintiffs § | |
| VS. § | CIVIL ACTION NO. C-12-108 |
| § | |
| THE UNITED STATES OF AMERICA § | |

ORDER

Before the Court is Defendant United States of America's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) or in the Alternative, Motion for Summary Judgment. D.E. 9. The question presented is whether the Plaintiffs have stated a claim that falls within this Court's jurisdiction. More specifically, the United States asserts that Chief Petty Officer Nicholas Jungman (Chief Jungman) was not acting in the course and scope of his military service when he allegedly fell asleep at the wheel and caused a collision that seriously injured the Plaintiffs. For the reasons set forth below, this Court disagrees. The United States' Motion to Dismiss (D.E. 9) is DENIED. The Court likewise DENIES the alternative Motion for Summary Judgment because Defendant's evidence does not demonstrate that it is entitled to judgment as a matter of law.

**STANDARD OF REVIEW**

Under a Rule 12(b)(1) jurisdictional challenge, the Court may consider any of the following: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications Inc.*,

117 F.3d 900, 904 (5th Cir. 1997).  Every case involving the question of "course and scope" must be decided on its own facts.  *Kunkler v. United States*, 295 F.2d 370, 372 (5th Cir. 1961).

Facts stated in the Complaint are accepted as true unless definitively controverted. *E.g., Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).  Both the Motion (D.E. 9) and the Response (D.E. 13, 14) are accompanied by affidavits and other materials offered for the purpose of determining the question of "course and scope" of employment.  While the United States objects to the Plaintiffs' evidence, it appears that the material facts are not disputed and the Court can arrive at its decision without reference to the Plaintiffs' proffered evidence.

It is the legal significance of the generally undisputed facts that the Court determines in order to adjudicate the Motion.  In that regard, the Court is not bound by the conclusions of law regarding "course and scope" offered by the United States' witnesses in their affidavits.  *E.g., Clark v. America's Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir.1997); *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 361 (Tex. 1971).

## FACTS

On the morning of the subject collision, Chief Jungman had just concluded his induction and indoctrination course for his promotion to Chief Petty Officer.  *E.g.,* Police Report (D.E. 9-1), Affidavit of McGlothlin (D.E. 9-2).  Part of that course was anticipated to cause fatigue and the United States had pre-determined that selectees

would not return to work duties the morning after the course concluded. Affidavit of McGlothlin and Thompson (D.E. 9-2, 9-4).

After breakfast on the final day, the selectees were instructed to rest, clean up, don their uniforms, and be ready for a pinning ceremony at noon. Affidavits of McGlothlin, Boardman, and Thompson (D.E. 9-2, 9-3, 9-4). Because of their impaired condition, selectees had sponsors who were responsible for making sure they had their uniforms and who were available to assist with any other needs their respective selectees may have before the pinning ceremony. D.E. 9-2, 9-3.

According to the affidavits offered by the United States, the selectees were briefed that they "could" or "should" bathe and rest at navy base facilities. D.E. 9-2, 9-3, 9-4. The selectees were instructed that they were not to go to their duty stations to work, but were to rest until the ceremony. D.E. 9-2, 9-3, 9-4. Thompson went to his own base housing to rest and clean up. D.E. 9-4.

According to the United States, Chief Jungman informed his sponsor that he wanted to go to his duty station on the base to shower and change and his sponsor agreed, watching Chief Jungman get in his truck and drive himself away. D.E. 9-3. Chief Jungman eventually went to his own residence, off of the navy base, where he rested and changed, putting on a pair of shoes that had not been on the base with his uniform. D.E. 9-3. While there is some question whether he needed or simply wanted those shoes from home, the Court does not find the distinction to be material, as set out below.

According to the police report (D.E. 9-1), when driving back to the navy base at 11:35 a.m.—just prior to the noon pinning ceremony— Chief Jungman fell asleep at the

wheel of his truck, drifted into oncoming traffic, and collided with two cars, one carrying Plaintiffs Paula and Lucas Garcia.

## DISCUSSION

When the United States is sued under the Federal Tort Claims Act (FTCA) for the negligent acts of military personnel, it is only liable for acts committed in the "line of duty." 28 U.S.C. §§ 1346(b), 2671. This line-of-duty determination is governed by state respondeat-superior laws that speak in terms of "course and scope" of employment. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (*per curiam*); *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993), *cert. denied*, 510 U.S. 1178, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994); *Garza v. United States*, 809 F.2d 1170, 1171 (5th Cir. 1987). The relevant "employment" is considered in light of the "special factors characteristic of military activity and discipline." *Bettis v. United States*, 635 F.2d 1144, 1147 (5th Cir. 1981); *Hinson v. United States*, 257 F.2d 178, 181 (5th Cir. 1958).[1]

The United States has not supplied the Court with a case directly on point. The instant facts do not fit neatly into other cases involving traffic accidents where the military employee is clearly following all of his employer's instructions or clearly so far beyond those instructions as to be going about his own business or on a classic "frolic and detour." Cases holding that an employee is outside the course and scope of

---

[1] *Contra, Brotko v. United States*, 727 F.Supp. 78, 80-81 (D.R.I. 1989) (noting that several circuits other than the Fifth have declined to consider the special factors characteristic of military employment in determining the scope of employment under the FTCA).

employment when engaged in an assault motivated by personal animosity do not assist with the analysis of this case, where the tort alleged is not an intentional one.

With respect to following instructions, case law does indicate that whether an employee is working in the course and scope of employment is not necessarily determined by whether he does exactly what he is told. If that were the test, the slightest deviation—indeed acting without specific instructions—would exonerate the employer. Instead, according to a general survey of case law, some of the factors that inform a "course and scope" analysis include:

> (1) Control of Time:[2] Whether the employee was under the employer's authority or right of control at the time. In other words, whether the employee was on duty, on leave, or at liberty.
>
> (2) Purpose of Mission:[3] Whether the employee was on the employer's business, accomplishing a purpose in the employer's substantial interest, and following orders. Alternatively, whether the employee so deviated from orders that he was no longer considered on his employer's mission but on his own or was subject to discipline or punishment.
>
> (3) Means and Manner:[4] Whether the employee was uniformed and/or equipped by the employer; whether the employee was traveling on

---

[2] *E.g., Kunkler, supra* (personnel on annual leave); *United States v. Farmer*, 400 F.2d 107, 110 (8th Cir. 1968) (personnel on active duty, travel status); *Weaver v. United States Coast Guard*, 857 F.Supp. 539, 544 (S.D. Tex. 1994) (soldier on liberty), *aff'd*, 53 F.3d 1282 (5th Cir. 1995) (*per curiam*); *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 355 (Tex. App.–El Paso 1993, no writ) (right of control at the instant of the event).

[3] *E.g., Garcia v. United States*, 88 F.3d 318, 321 (5th Cir. 1996) (going out drinking on business trip not within course and scope); *Galveston, H & S.A. Ry. Co. v. Currie*, 96 S.W. 1073 (Tex. 1906) (prank conducted with business materials on business time is not within course and scope); *Green v. Jackson*, 674 S.W.2d 395 (Tex. Civ. App.—Amarillo 1984, writ ref'd n.r.e.) (assault arising from rancor developed during business/customer relationship is based on personal animosity, not business).

[4] *E.g, Hallberg v Hilburn*, 434 F.2d 90 (5th Cir. 1970) (uniformed personnel reporting on time with sufficient clothing for time of duty, having had expenses covered was in line of

business with travel expenses, instructions, or expectations. Alternatively, whether the employee was merely coming and going to work on a normal work day or using his own means.

### A. Control of Time

In this case, the United States, as employer, had exhausted its employee, Chief Jungman. Anticipating that and with that knowledge, its plan was to keep him on duty, but not require him to report to his duty station for normal work. Instead, his "tasks" were to rest, clean up, and prepare for the pinning ceremony. While facilities were made available on base for those tasks, he was not prohibited from getting in his own truck to drive to a place where he was expected to accomplish his tasks. His sponsor watched him drive away and did not make any effort to stop him or report him. He was not on leave. He was not at liberty. According to the affidavits supplied by the United States, Chief Jungman was on duty and subject to his employer's authority and control.

### B. Purpose of Mission

The United States argues that Chief Jungman's actions in leaving the base were disobedient. He was provided with everything needed to prepare on base and had a sponsor to assist with anything else, such as retrieving a different pair of shoes. However, the question is whether Chief Jungman's trip to his own residence was so

---

duty); *Stone v. United States*, 408 F.2d 995, 996 (5th Cir. 1969) (*per curiam*; not in course and scope where orders were to use commercial transportation and employee used personal vehicle); *American Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370, 374 (Tex. 1957) (routine commute not within course and scope); *Kennedy v. American Nat. Ins. Co.*, 107 S.W.2d 364, 366 (Tex. 1937) (personal vehicle used with express or implied consent is within course and scope).

disobedient as to take him out of the employer's mission or to subject him to discipline or punishment. The evidence does not bear out the United States' argument.

Chief Jungman's fellow selectee, Chief Thompson, went to his own residence, that was in base housing. The instructions thus did not require Chief Jungman to remain at the particular facility offered. Neither did they prevent a residential trip. Nothing about the instructions as related in the United States' affidavits indicates that Chief Jungman would be precluded from making a trip to his residence or be disciplined for doing so.

One of the cases cited by the United States addressed the test for evaluating the significance of deviations from an employer's instructions.

> Where the deviation is slight and not unusual, the employee is held to be engaged in his employer's business; but if the deviation is very marked and unusual, the employee is held not to be at all on his employer's business but solely on his own. While the degree of the deviation is ordinarily a question of fact, it becomes solely one of law, where the basic, material facts are not in issue . . . .

*McGarrh v. United States*, 294 F.Supp. 669, 672 (D.C. Miss. 1969). The Fifth Circuit has applied this rule to hold that an employee who goes out drinking while on a business trip is not in the course and scope of employment.

> The deviation exception is consistent with the general rule that "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone."

*Garcia v. United States*, 88 F.3d 318, 321 (5th Cir. 1996) (quoting *Texas & Pac. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 241 (Tex. 1952) (holding personal animosity, not the

employer's business, was the source of assault even though friction began with employer's investigation)).

Chief Jungman was in the process of accomplishing the essential goals of his employment, as identified by his employer at that time. He deviated from his employer's instructions, but not so much as to depart from the basic task. He did not go out drinking. He did not leave in order to attend to separate personal business. He was not involved in an intentional tort. There is no evidence that he had any purpose for going to his residence other than to prepare for the pinning ceremony. No evidence has been supplied that Chief Jungman did anything but rest, clean up, put on his uniform, and try to return on time.

The United States asserts that Chief Jungman's choice of shoes was a personal errand sufficient to take him out of the course and scope of his employment. But there is no evidence that the shoes were not an appropriate part of his uniform. While the United States claims that they were not required, they were fully consistent with the pinning ceremony. Had Chief Jungman gone to his residence to retrieve an item of clothing inconsistent with his employment, he might have taken himself out of the course and scope. But that is not what the evidence shows.

Under applicable Texas law, "[A]n employee's arrangement of the performance of his duties in a manner consistent with his personal convenience does not take him out of the scope of his employment." *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). This is the "dual purpose" doctrine.

> Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or a third person. The fact that the preponderate motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service of his employer.

*Best Steel Buildings v. Hardin*, 553 S.W.2d 122, 128 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.). *See also*, *Howard v. American Paper Stock Co.*, 523 S.W.2d 744 (Tex. Civ. App.—Fort Worth 1975), *reformed and aff'd*, 528 S.W.2d 576 (Tex. 1975) (*per curiam*, regarding interest on judgment). Thus it does not matter whether the shoes Chief Jungman chose were required. The fact that they were consistent with the uniform and were retrieved for purposes of the pinning ceremony is sufficient to keep him within the course and scope of employment.

### C. Means and Manner

While he was driving his personal vehicle rather than any employer-supplied transportation, his sponsor had expressly or impliedly approved of that method of travel at that time when he handed Chief Jungman his uniform and watched him drive away. Personal ownership of the vehicle is not dispositive when the employer has consented to its use. *Kennedy v. American Nat. Ins. Co.*, 107 S.W.2d 364, 366 (Tex. 1937).

Chief Jungman was fully uniformed at the time of the collision and was on a direct path to report for the pinning ceremony. His travel was not mandated, specified, or reimbursed. But neither was he traveling between his residence and employment at the beginning of the day, end of the day, or for lunch. Travel can be within the course and

scope of employment when it is not a routine commute.  *E.g., Aguirre v. Vasquez*, 225 S.W.3d 744 (Tex. App.—Houston [14th Dist. 2007, no pet.).   He was "at work" or "on the job" according to the general expectations of his employer.

## CONCLUSION

Accepting the evidence provided by the United States and without necessity of factoring in the Affidavit of Jon W. Shelburne or the Deposition of Chief Jungman, the Court holds that the Plaintiffs' claims are based upon Chief Jungman's acts done in the course and scope of employment or in the line of duty.  Consequently, this Court has jurisdiction under the FTCA, the Plaintiffs have stated a claim upon which relief can be granted, and the United States' Motion to Dismiss and alternative Motion for Summary Judgment are DENIED in their entirety.

ORDERED this 12th day of October, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE